UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-160(28) (NEB)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DEANDRAE POE,

        Defendant.

**GOVERNMENT'S SENTENCING POSITION**

*"Whether it be from violence with guns, drug sales, a combination of both, we have been preyed upon enough as a community."*

- Concerned Community Member Who Fears Retaliation.

For over 20 years, the Highs criminal enterprise attempted to hijack much of north Minneapolis. It indoctrinated youth, funded its operation by converting public spaces into open-air drug markets, and desensitized entire neighborhoods to the regular sound of machinegun fire. Highs members glorified the gang at the expense of any other consideration. It was more important to shoot a rival gang member on sight—be it a public place, a drive-by shooting, or at a well-attended party—than to worry about killing innocent bystanders. The Highs criminal enterprise is a scourge on public safety.

Defendant Deandrae Poe must answer for the role he played in the Highs' narcotics trafficking empire.[1] The whole here is much greater than the sum of its parts, and Poe's decision to obtain, bulk distribute, and sell the enterprise's contributed to the pervasive sense of fear, instability, and danger that has held north Minneapolis hostage for two

---

[1] For each defendant in this matter, the government will simultaneously file a sealed letter to the Court outlining additional information regarding each defendant's broader role in the Highs criminal enterprise.

decades. For his contribution to, and acceptance of, these realities, Poe's sentence must reflect the seriousness of the offense, promote respect for the law, and effectuate necessary deterrence. The sentence must also reflect Poe's relative involvement in the enterprise and his decision to accept responsibility for his actions. The parties therefore jointly agree that a sentence within the Guidelines range that corresponds to a total offense level of 30 and Poe's criminal history category is sufficient but not greater than necessary to achieve the goals of sentencing.

## The Highs Criminal Enterprise

The Highs began laying claim to areas of north Minneapolis in 2004. Since that time, the Highs have dominated a large swath of north Minneapolis and its members have ruthlessly protected its turf. The Highs are engaged in a violent rivalry with the Lows. Each gang's moniker stems from its location—north or south—of West Broadway Avenue in Minneapolis:



*Figure 1: Overview of Highs and Lows Territories*

The May 2004 murder of Christopher Little, a known Lows member, proved to be a cataclysmic event in the history of the enterprise. Members of the Highs and Lows have engaged in hundreds of shootings and murders in their territories since Little's murder, which only serves to restart the circles of violence and revenge. The victims of the violence were not only members or associates of the gangs, but also innocent adults and children who simply live within the gangs' territories.

Although the Highs enterprise consists of several "cliques," the gang's singular objective has remained the same: its members must "put in work" to promote, benefit, and enrich the gang. Highs members must commit acts of violence, procure firearms to facilitate the gang's activities, or engage in criminal activity such as fraud, robbery, or drug trafficking. The only other requirement is that members instill fear in rival gang members. Members of the Highs are expected to "hunt" rival gang members: an express directive to locate and kill rivals. Highs members also are expected to defend each other and to respond to any perceived disrespect from rival gangs. Highs and Lows gang members frequently take to social media to heighten their rivalry. Members of each gang post photographs trespassing in the other gang's territory or defacing the graves of murdered rivals. Highs members also frequently post images of themselves with money, drugs, and expensive items to gain respect. This glorification of gang life also serves to lure others into the lifestyle.

The Highs' existence depends on the success of the criminality of its members, which is comprised of a loosely defined and fluid hierarchy of (1) members who earned substantial respect from past criminality and receive a higher amount of the profits, host gatherings, and cover funeral expenses; (2) members focused on engaging in armed

violent activity to protect Highs activities and target rival members; and (3) members focused on drug or weapons trafficking to further the ends of the criminal enterprise. Its members resort to any crime—murder, kidnapping, arson, robbery, bribery, extortion, gambling, fraud, drug trafficking, arms dealing—so long as it glorifies the Highs enterprise or denigrates a rival gang.

Although its general credo has created violence in many parts of Minneapolis, a particular area within Highs territory acts as a representative microcosm of its activities. The Highs criminal enterprise runs rampant in the area of West Broadway and North Lyndale Avenue, including numerous businesses, and turned it into a de facto Highs headquarters:



*Figure 2: Intersection of West Broadway and North Lyndale Avenue in Minneapolis*

In fact, the Winner Gas Station has been openly referred to as "The Murder Station," "Murder Shop," or simply the "Murder," while the nearby Merwin Liquors and Walgreens have been essentially open-air drug markets.[2] The Highs stranglehold on this area has been so tight that its members do not hesitate to flaunt their illegal activities openly:



*Figure 3: Highs Member Flaunting Currency Outside Winner Gas in Highs Territory*

The sheer amount of gun violence, drug trafficking, and other illicit activity demonstrate the extent to which the Highs have damaged the community.  Between

---

[2] This Walgreens location has since closed, in part due to the Highs activities in and around its location.  This is a representative example of how the enterprise can affect the economic health of communities.

2018 and 2023, in north Minneapolis alone—comprising both Highs and Lows territory—the statistics are staggering:

- 2,043 recovered firearms;
- 105 recovered switches;
- 7,997 "shots fired" calls;
- 20,265 ShotSpotter activations;
- 1,151 gunshot victims; and
- 155 homicides

The plague of opioids—and particularly fentanyl, a prime Highs product—requires no introduction. According to the Minnesota Department of Health, in 2022, Minnesota reported 4,228 non-fatal opioid-involved overdoses.[3] Unfortunately, overdose deaths in Minnesota due to opioid misuse has skyrocketed from 342 in 2018 to 1,002 in 2022.[4] Hennepin County alone experienced 378 opioid-related deaths in 2022, 94.7% of which were directly linked to fentanyl.[5] Beginning in approximately 2020, the Highs began actively contributing to this epidemic when it transitioned from marijuana sales as its primary moneymaker to instead peddling synthetic opioids.

Put simply, instead of getting gas at the local station or picking up prescriptions at the neighborhood Walgreens, residents near Highs territory live with the fear of being robbed, shot with a machinegun during a gang-related shooting, or losing a loved one to a fentanyl-related incident. The Highs criminal enterprise, fueled by the greed of its members and their thirst for power and respect, is a public health crisis.

---

[3] Minnesota Department of Health, *Drug Overdose Dashboard,* last accessed 2/6/2024 at https://www.health.state.mn.us/opioiddashboard.
[4] *Id.*
[5] Hennepin County, *Overdose Epidemic*, last accessed 2/6/2024 at https://www.hennepin.us/opioid.

### Deandre Poe's Criminal Conduct

Defendant Deandrae Poe is a member of the Emerson Murder Boys (EMB) and Young n' Thuggin (YNT) subsects of the Highs criminal enterprise. ECF No. 1619 (PSR) at ¶ 18. His "work" for the gang focused on interstate drug trafficking and local sales. *Id.* at ¶¶ 18-25. Specifically, between November 2022 and March 2023, Poe made several round-trip flights to Arizona during which he mailed at least four bulk parcels of fentanyl back to Minnesota using the United States Postal Service. *Id.* at ¶ 19-20. Poe admitted that he sent these packages to addresses associated with other Highs members and associates. Plea Agreement at ¶ 23; PSR at ¶ 33. Though Poe's offense conduct begins in 2022, his involvement with the Highs criminal enterprise dates back to 2008 first as a member of EMB and then as a member of YNT. *Id.* at ¶ 77. Poe remained a member of the criminal enterprise for the next 15 years and his offense conduct was committed while a member of and in furtherance of the conspiracy. *See, generally, id.*; Plea Agreement.

In addition to Poe's larger distributions between Arizona and Minnesota, he has also been found in possession of multiple fentanyl pills on several occasions. For example, in April of 2023 a search of Poe's person recovered 28 fentanyl pills and in August of 2023 he was arrested in possession of 256 fentanyl pills. PSR at ¶¶ 22-23. Later in November of 2023, a search of Poe's residence recovered 84 grams of fentanyl. *Id.* at ¶ 25. Poe's drug trafficking as part of the Highs criminal enterprise was unique for its sheer volume and interstate impact over a shorter period.

On November 8, 2023, a grand jury in this District charged Poe and numerous other Highs members in a Superseding Indictment with RICO conspiracy, drug

trafficking, unlawful firearm possession, and other related offenses. ECF No. 450. On October 3, 2024, Poe pled guilty to engaging in a RICO conspiracy with the Highs criminal enterprise. ECF Nos. 1434, 1435. In doing so, Poe admitted to his involvement with the Highs criminal enterprise, his role as a drug trafficker for the benefit of the enterprise, and his responsibility for distributing at least 4 kilograms but less than 12 kilograms of fentanyl. Plea Agreement at ¶¶ 20-26.

### The Presentence Investigation Report

The Presentence Investigation Report (PSR) calculated Poe's Guidelines range at 188-235 months of imprisonment, based on a total offense level of 31 and a criminal history category of VI. PSR at ¶ 111. This calculation does not include a two-level dangerous weapon enhancement. *Id.* at ¶¶ 36-37. The government maintains its objection to non-application of the dangerous weapon enhancement given the parties' agreement that the enhancement applies.[6] Plea Agreement at ¶ 28; ECF No. 1596. In any event, the government has agreed to recommend a sentence within the Guidelines range for a total offense level of 30. Plea Agreement at ¶ 40. This range more accurately reflects Poe's relative culpability within the enterprise. Accordingly, the government's objection may not require a ruling from the Court.

### The Appropriate Sentence

The government submits that a custodial sentence within the Guidelines range for the agreed upon total offense level is appropriate to address the gravity of Poe's conduct. The distribution of fentanyl, even in small quantities, poses an extraordinary

---

[6] Contrary to the PSR's assertion at ¶ 4, Poe did not dispute application of the dangerous weapon enhancement. *See* Plea Agreement at ¶ 28; ECF No. 1609.

8

risk to public safety.[7] Poe's involvement in the Highs' fentanyl trafficking operations, and especially in its large-scale distribution across state lines directly contributed to the addiction and violence plaguing Minneapolis neighborhoods. These open-air drug markets, perpetuated by the Highs, fostered environments of lawlessness, marked by rampant gunfire and the degradation of community well-being.

Poe was fully aware of the violence associated with the Highs' operations Plea Agreement at ¶ 25. He acknowledged that firearms were a routine aspect of the gang's drug trafficking activities, increasing the likelihood of deadly confrontations. *See id.* This "protection" often escalated into indiscriminate gunfire, leaving entire neighborhoods in fear. Despite being a victim of gun violence himself, and having a close friend die by gunfire outside his home, Poe chose to perpetuate the cycle of harm, demonstrating a disregard for the safety of others. PSR at ¶¶ 82, 86.

Poe's personal history provides some context for his decisions, though it cannot fully excuse his adult conduct. As the PSR notes, Poe "experienced family dysfunction, inadequate resources, a lack of supportive parenting, juvenile delinquency, an extended juvenile placement, and substance abuse all before the age of 18." *Id.* at ¶ 128. It is no surprise that Poe's juvenile violent tendencies, left unaddressed by an unstable home life, escalated into homelessness and eventual gang membership. Although Poe seemed to find some hope following his first federal sentence and successful completion of Reentry Court, he returned to drug trafficking soon after his release. Multiple

---

[7] The United States Drug Enforcement Administration (DEA) estimates that "2mg [of fentanyl], the amount on the tip of [a] pencil, can be enough to kill an average American." *See* United States Drugs Enforcement Administration, *One Pill Can Kill*, last accessed 1/8/2025 at https://www.dea.gov/onepill.

successive and increasing prison sentences have not seemed to curtail Poe's return to the streets or the Highs criminal enterprise. *Id.* at ¶¶ 49-59, 128-129. Instead, Poe embraced the Highs' lifestyle, contributing to the destruction they wrought on his surrounding community.

By the same token, in determining an appropriate sentence, the government has also carefully weighed Poe's relative culpability against the broader context of the Highs' criminal enterprise. Although he played a vital role in distributing fentanyl across already vulnerable communities (which cannot be understated), Poe was not a decision-maker within the organization and his offense conduct did not involve direct acts of violence or possession of a firearm compared to several of his co-defendants. These mitigating factors, along with his decision to accept responsibility early, warrant some leniency. At the same time, Poe's actions as a willing participant in the enterprise's narcotics activities – particularly his bulk distributions of a lethal drug like fentanyl – cannot be overlooked.

A custodial sentence within the Guidelines range for the agreed upon total offense level will serve several important purposes. It will hold Poe accountable for his choices, send a clear message about the consequences of engaging in organized crime, and protect the community from further harm. The duration, scale, and destruction of the Highs' operations demand a strong response from the Court. Poe's sentence, along with those of his co-defendants, must reinforce the principle of collective responsibility for the harm caused by the enterprise.

Poe's participation in the Highs criminal enterprise has had devastating consequences for the community. While his personal history offers some mitigating

circumstances, his decision to traffic fentanyl and facilitate gang violence underscores the need for a serious penalty. A sentence within the Guidelines range for the agreed upon total offense level is necessary to reflect the seriousness of the offense, promote respect for the law, and deter others from similar conduct. It is imperative that Poe understand the significance of his choices. A custodial sentence within the Guidelines will serve the goals of specific and general deterrence. The duration, breadth, and destruction of the Highs criminal enterprise is unparalleled in the Twin Cities. The Court's sentence, and all those that follow, must send the important message that *each* member of the Highs bears collective responsibility for how the enterprise impacted the community at large.

## Conclusion

For all these reasons, the government respectfully submits that a Guidelines sentence corresponding to the agreed upon total offense level of 30 followed by a 3-year term of supervised release fully comports with the United States Sentencing Guidelines and the factors of Title 18, United States Code, Section 3553(a).

Dated: January 17, 2024               Respectfully Submitted,

                                      ANDREW M. LUGER
                                      United States Attorney

                                      */s/ Albania Concepcion*

                                      Albania Concepcion
                                      Attorney ID No. 0401536
                                      Assistant United States Attorney